## HIGGINS et v CLEVELAND & BUFFALO TRANSIT CO.

Common Pleas Court, Cuyahoga Co

No 508604. Decided Feb 18, 1942

James M. McSweeney, Cleveland, for plaintiff.

Milton C. Portmann, Cleveland, for defendant.

## OPINION

By ORR, J.

This is an action brought by the plaintiffs for damages and penalties for violation of the provisions of §15(a) (2) and §15(a) (5). of the Fair Labor Standards Act of 1938. (Act of June 25, 1938, Chapter 676, 52 Statutes at Large 1060, Title 29, Section 201, et seq., of the Code of the United States).

The essential facts in this case are not in dispute. They are substantially as follows:

The defendant was the owner of the S. S. Goodtime. The plaintiff John Higgins was employed by the defendant as a shipkeeper on the S. S. Goodtime from January 1st, 1939, to April 5, 1940. The other plaintiff Joseph Hagerman was similarly employed from October 1st, 1938, to April 5, 1940. The duties of both plaintiffs were to guard the vessel against intrusion, fire or damage.

The S. S. Goodtime was operated up to September, 1938, in carrying passengers in interstate traffic. It was laid up in Septebmer, 1938. During all of the time that both plaintiffs were employed, it was so tied up in the port of the city of Cleveland and was never, after September, 1938, engaged in interstate commerce, but was sold about May 6th, 1940, for the benefit of the creditors of the defendant company which was then in liquidation. During part of this time, however, there was outstanding for the S. S. Goodtime the certificate of inspection of the Cleveland Harbor Master, which certificate of inspection did not expire until the 10th day of June, 1939, at which time it was not renewed.

The defendant was engaged in interstate commerce from September, 1938, until the 31st day of March, 1939, but during that period of time operated no boats, but did operate a trucking line between Cleveland, Ohio, and Buffalo, New York, under and by authority of a certificate of convenience issued by the Interstate Commerce Commission. From and after the 31st day of March, 1939, the defendant was in liquidation and never directly or indirectly engaged in interstate commerce or in the production of goods for commerce.

The plaintiffs were paid 25 cents per hour and received no overtime within the meaning of the Fair Labor Standards Act, and each was employed twelve hours per day continuously during their periods of employment. By stipulation of the parties it was agreed that if the parties were entitled to overtime under the Act, the plaintiff Higgins would be entitled to overtime for 2490 hours and the plaintiff Hagerman for 3130 hours.

The question to be determined is whether under the above facts the employees were protected by the Fair Labor Standards Act, and the employer amenable to the provisions thereof.

Title 29, paragraph 207 of the Act reads as follows:

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce:

(1) For a work week longer that 44 hours during the first year from the effective date of this section;

(2) For a work week longer than 42 hours during the second year from such date or;

(3) For a work week longer than 40 hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed."

Title 29, paragraph 213 of the Act reads as follows:

"* * * (b) The provisions of Section 7 (paragraph 207 of this title) shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of §304 of the Motor Carrier Act, 1935, or (2) any employee of an employer subject to the provisions of Part 1 of the Interstate Commerce Act."

It is the contention of the plaintiff that the S. S. Goodtime had been employed in interstate commerce, for part of the time at least had its certificate of inspection, was capable of sailing again at any time and therefore that the plaintiffs were at work upon an instrumentality of commerce and by reason thereof are entitled to the protection of the Act.

On the other hand the defendant contends that in order for it to be amenable to the Act the employees must be "engaged in commerce" and that it cannot be said that being ship-keepers and nothing more makes its employees so engaged in commerce. It further contends that even if it could be said that such employees were engaged in commerce, by the specific provisions of paragraph 213 supra, the Fair Labor Standards Act would not apply, since it would be subject to the provisions of the Interstate Commerce Act.

It is agreed that the plaintiffs are not seamen; therefore, there can be no question of exemption under the provisions of paragraph 213(3) of the Act. There is also no contention that the plaintiffs were "engaged in the pro-

duction of goods for commerce". The question is, therefore, narrowed to whether or not the plaintiffs were "engaged in commerce".

An act such as the Fair Labor Standards Act, which has for its object the improvement of working conditions should receive liberal interpretation by the courts, but of course the courts are limited in their interpretation and should not go so far as to write into the law something which is not within its contemplation. Counsel has not furnished the Court with any cases precisely in point, and we have found none in this state touching upon the question.

In the case of Jacob, Admr. v Coppersmith & Sons, Inc., 2 Labor Cases, No. 18,557,—the court held that a watchman was engaged in an occupation necessary to the protection of goods produced by the employer for interstate commerce, and was, therefore, engaged in the production of such goods within the meaning of the Act.

In the case of Fleming v Pearson Hardwood Flooring Co., 39 Fed. Supp. 300, the court held that the employer was amenable to the provisions of the Act where it employed a man as night watchman to guard its plant and inventories thereabout, which the defendant expected to and which did move in interstate commerce. With these cases we are in accord, for the reason that here the watchmen were engaged in protecting goods which did move in interstate commerce.

On the other hand in the case of Rogers v Glazer & Pack, 32 Fed. Supp. 990, the United States District Court for the Western District of Missouri held that a person employed as a watchman. by a company principally engaged in the retail sale of used automobile parts, where such watchman was employed to protect from depredation by thieves their employers' business and the property was on the site of its business and was not engaged in commerce, was not entitled to the rights conferred by the Fair Labor Standards Act. It was also held in the case of Matthew Schreiber v Cane

Service, 3 Labor Cases, No. 60,110, that an employee of a company providing watchmen to those who desired such service, whether such person's business is interstate or intra state, was not engaged in the production of goods for commerce, though a watchman employed by one selling goods in interstate commerce may be so engaged.

It is clear from the Act that it is the employee and not the employer who must be in commerce and that whether or not an employee is engaged in commerce depends upon the circumstances of each case. It is the purpose of the Fair Labor Standards Act to eliminate from industry engaged in interstate commerce or the production of goods for such commerce, the existence of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers in such industries and production in order to prevent disruption of such commerce. (United States v Darby, 312 U. S. 100). While courts should be liberal in the construction of the law in order to accomplish the commendable purposes of the Act, they should not by strained construction depart from the plain intent thereof, because such departures defeat the very purpose of the Congress, and injure those rightfully entitled to the benefit of the Act.

Can it therefore be said that one who is employed as a shipkeeper or watchman, to guard a vessel against intrusion, fire and damage, is thereby engaged in interstate commerce, and was it within the contemplation of the framers of the Act to protect such individuals?

Unfortunately in this case there is no evidence which indicates the intention of the employer with reference to continuing the Goodtime in interstate commerce, after she was tied up to the dock in Cleveland. It seems to us that that is an important consideration.

If, for instance, the ship which had been in interstate commerce was merely laid up for temporary repairs, or even for a seasonal overhauling, or because of the closing of navigation for the winter, and it was the intention of the owners to place her again in commerce after the repairs were made or navigation reopened, then it might well be said that these plaintiffs were engaged in interstate commerce. If, on the other hand when the ship was laid up it was the intention of the owners never again to place her in navigation as their property, the situation would be entirely different. Not knowing the intention of the parties we must then consider what followed her discontinuance from service as bearing upon this intention. We know that upon the opening of navigation in the spring of 1939, the Goodtime was not again placed in service but that she remained tied to her dock and the plaintiffs continued their services as shipkeepers. We know also that on June 10, 1939, her certificate of inspection expired and was not reissued, and that after that time she could not have been put in service without such certificate. We know, further, that on May 6, 1940, she was sold by the liquidating committee which was liquidating the defendant company for the benefit of its creditors.

As above stated it is agreed that the plaintiffs were shipkeepers, not seamen. Webster's New International Dictionary defines a shipkeeper as—

"A watchman in charge of a ship in the absence of officers and crew."

And a seaman as—

"One whose occupation is to assist in the management of ships at sea; a mariner; a sailor, applied to officers and especially to common sailors."

The very definition of the above terms indicates that a shipkeeper because of his duties is not ordinarily engaged in commerce, while a seaman is usually so engaged. It is hard to conceive of a vessel moving in commerce without officers or crew, and it is equally true that a vessel would have to have seamen aboard to sail in commerce.

In view of all these circumstances we are of the opinion that the mere fact that the defendant ██ company owned a ship which was capable of sailing, and the plaintiffs were employed thereon does not, of itself, make them engaged in commerce. The mere fact that the ship was an instrumentality which could be used in commerce does not necessarily mean that it was so used, and we are of ██ the opinion that it is the use of the instrumentality which should be determinative of the rights of the plaintiffs. To hold otherwise would be like saying that because one owned a gun he thereby was a soldier.

It is also contended by the defendant that while the S. S. Goodtime was not in interstate commerce, the corporation was engaged in the operation of a motor truck line which brought it within the provisions of Title 29, paragraph 213, supra, of the Act, and the Commission having jurisdiction over its employees, the provisions of Section 207 did not apply. In the case of United States & Interstate Commerce Com. et v American Trucking Assn. Inc. et, 60 Supreme Court 1059, the court held that this Section (213) dealt only with the qualification and maximum hours of service of employees, and that it was limited to those employees whose activities affected the safety of operation of the motor vehicles, and therefore that the Commission had no jurisdiction to regulate the qualifications or hours of service of any others. In our opinion this case effectively refutes the contention of the defendant.

For these reasons the Court is of the opinion that under the facts and circumstances in this case the plaintiffs are not entitled to the benefits of the so-called Fair Labor Standards Act, and the employer is not amenable to the provisions thereof, and accordingly there will be a finding entered in favor of the defendants.